NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DANIEL SMITH,<br><br>              Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security<br>Administration,<br><br>              Defendant. | Civil Action No.: 15-1272 (JLL)<br><br>**OPINION** |

**LINARES,** District Judge.

This matter comes before the Court upon the appeal of Daniel Smith ("Plaintiff") from the final decision of the Commissioner upholding the final determination by Administrative Law Judge ("ALJ") Hon. Louis G. Mc Afoos III, denying Plaintiff's application for Child's Insurance Benefits ("CIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). ALJ Mc Afoos found that Plaintiff was not disabled as defined in sections 223(d) and 1614(a)(3)(A) of the Act, pertinent to Plaintiff's applications for CIB and SSI, respectively.

The Court has jurisdiction over this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), and resolves this matter on the parties' briefs pursuant to Local Civil Rule 9.1(f). After reviewing the submissions of both parties, for the following reasons, the Court will remand this matter back to the ALJ for reconsideration of Plaintiff's application in a manner consistent with this Opinion.

I.       **Background**[1]

     **A. Factual History**

In Plaintiff's applications for CIB and SSI, filed on July 21, 2010, he claimed that he had been disabled since June 1, 1995. (R. at 213, 217). Specifically, Plaintiff claimed that he was disabled due to a learning disability, speech impairment, back injury, depression, bipolar disorder, and anxiety. (Id. at 393). In other words, Plaintiff claims to suffer from both physical and non-physical impairments.

Plaintiff cites to complications during his birth as well as a fall down stairs at six months of age, which resulted in a facture to his skull in three places, as the beginning of his struggles with speech difficulties and learning. (ECF No. 10, "Pl's. Mov. Br." at 2). Plaintiff's early academic records revealed "signs of a mild neurologically based learning disorder associated with normal cognitive functioning" with "some degree of central auditory processing dysfunction." (R. at 773). Tests performed when Plaintiff was fourteen years old showed that his intellectual functioning was "within the low average to average range." (Id. at 721). Educational records from Plaintiff's later high school years indicate that Plaintiff received special education services, had a stuttering problem, and that in the eleventh grade he fell below his peers in reading comprehension, written language and math skills, testing at ninth, eighth, and seventh grade levels in each of these categories, respectively. (Id. at 773-776). Plaintiff graduated from high school, with a class ranking of 87 out of 103 students. (Id. at 58, 467).

Beginning in 2004, Plaintiff was hospitalized on several occasions in connection with his bipolar disorder, depression, anxiety, and/or suicidal ideation, as well as for abdominal pain thought to be associated with drug use. Once admitted, Plaintiff typically remained in the hospital

---

[1] "R" refers to the Administrative Record, which uses continued pagination and can be found at ECF No. 7.

for only a few days; however, on one occasion Plaintiff remained in the hospital for approximately two weeks (id. at 983), and on another occasion he was not discharged until more than three weeks after arrival.  (Id. at 985).  Plaintiff was prescribed numerous medications for his psychological symptoms and pain.  (Id. at 61).  Plaintiff testified, and the medical records substantiate, that he abused both legal and illegal drugs and that he was often non-compliant with the medications prescribed to him.  (Id. at 56).

In addition to facing difficulties with certain cognitive functioning, psychological diagnoses, and drug and alcohol dependence, Plaintiff also complains of back pain resulting from a 2005 motor vehicle accident.  (R. at 58).  In February 2005, Plaintiff was diagnosed with "cervical/lumbar strain; myofascial syndrome."  (Id. at 783).    In March 2006, plaintiff was diagnosed with "chronic back pain."  (Id. at 1463).  Medical records from Plaintiff's 2012 incarceration reveal that Plaintiff had been taking a pain medication for his back and neck pain, with little relief; however, the nurse's exam indicated that Plaintiff's gait, balance, range of motion, and muscle strength were all normal. (Id. at 1412-13).  August 2010 treatment notes indicate that Plaintiff presented with back pain and testing revealed herniated discs and tenderness in the paraspinal region; however, lower extremity reflexes were intact and Plaintiff maintained full strength in his lower extremities.  (Id. at 1149-50).  A December 2010 examination revealed a diagnosis of "neck and back pain" with "no positive findings," and indicated that Plaintiff "was able to sit, stand, and walk," as well as do household chores.  (Id. at 644-46).

Plaintiff has had several run-ins with the law, and testified before the ALJ that he had been imprisoned "three, four times" for burglaries and arson of motor vehicles.  (Id. at 56-57). Specifically, Plaintiff was incarcerated in 2008, and again in 2009 and 2012.  (Id. at 56).  When asked by ALJ Mc Afoos why Plaintiff committed these crimes, Plaintiff stated that he was "off

[his] meds" and "under the influence of drugs." (Id.). Plaintiff explained that he was committing these crimes to "support [his] habit at the time." (Id. at 57).

At the time of the hearing on December 4, 2012, Plaintiff was taking numerous medications for the physical pain as well as for his depression and anxiety. (Id. at 59-60). Plaintiff testified that he had been sober since he went into jail on June 28, 2012. (Id. at 63). Plaintiff further testified that while he takes the prescribed medications daily, he still suffers from anxiety, depression, and a stutter of speech. (Id. at 64-65). Plaintiff testified that he has not been able to hold down a job on account of physical pain and depression. (Id. at 58-59).

### B. Procedural History

Plaintiff filed applications for CIB and SSI on July 21, 2010. (R. 213-220). In both of these applications, Plaintiff claimed that he has been disabled since June 1, 1995, prior to the time he turned twenty two years old. (Id. at 213, 217). Specifically, Plaintiff claimed that he was disabled due to a learning disability, speech impairment, back injury, depression, bipolar disorder, and anxiety. (Id.). These claims were initially denied on January 19, 2011. (Id. at 130-139). On June 9, 2011, Plaintiff filed a request for reconsideration, along with a statement of good cause for untimely filing. (Id. at 140). On October 21, 2011, upon reconsideration, Plaintiff's claims were again denied. (Id. at 150-155). On October 31, 2011, Plaintiff, by way of his attorney, filed a request for a hearing by an administrative law judge. (Id. at 156). A hearing was held on December 4, 2012 (id. at 47-69), and on April 9, 2013, ALJ Mc Afoos denied Plaintiff's requests for CIB and SSI, upon a finding that Plaintiff is not disabled (id. at 16-46).

On June 5, 2013, Plaintiff requested a review of the ALJ's determination with the Appeals Council (id. at 14-15), which request was subsequently denied on December 29, 2014 (id. at 1-6). Thereafter, Plaintiff commenced this action. Both parties filed briefs in accordance with Local

Civil Rule 9.1.  (See Pl.'s Mov. Br.; ECF No. 11, "Def's. Opp. Br.", ECF No. 12, "Pl.'s Reply Br.").

## II.     STANDARD OF REVIEW

A reviewing court will uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000).  Substantial evidence is "more than a mere scintilla but may be less than a preponderance." *Woody v. Sec'y of Health & Human Servs.*, 859 F.2d 1156, 1159 (3d Cir. 1988).  It "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation omitted).  Not all evidence is considered substantial.  For instance,

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g. that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.

*Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).  The ALJ must make specific findings of fact to support his ultimate conclusions. *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983).

The "substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).  It does not matter if this Court "acting *de novo* might have reached a different conclusion" than the Commissioner. *Monsour Med. Ctr. V. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986) (citing *Hunter Douglas, Inc. v. Nat'l Labor Relations Bd.*, 804 F.2d 808, 812 (3d Cir. 1986)).  "[T]he district court . . . is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182

(3d Cir. 1992) (citing *Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir. 1984)). A Court must nevertheless "review the evidence in its totality." *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984)). In doing so, the Court "must 'take into account whatever in the record fairly detracts from its weight.'" *Id.* (citing *Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988)). In summary, "the evidence must be sufficient to support the conclusion of a reasonable person after considering the evidentiary record as a whole, not just the evidence that is consistent with the agency's finding." *Monsour*, 806 F.3d at 1190 (internal quotations omitted).

A court must further assess whether the ALJ, when confronted with conflicting evidence, "adequately explain[ed] in the record his reasons for rejecting or discrediting competent evidence." *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing *Brewster v. Heckler*, 786 F.2d 581 (3d Cir. 1986)). If the ALJ fails to properly indicate why evidence was discredited or rejected, the Court cannot determine whether the evidence was discredited or simply ignored. *See Burnett v. Comm'r of Soc. Sec*, 220 F.3d 112, 121 (3d Cir. 2000) (citing *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)).

### III.     APPLICABLE LAW

#### A.      The Five-Step Process for Evaluating Whether a Claimant has a Disability

A claimant's eligibility for benefits is governed by 42 U.S.C. § 1382. Pursuant to the Act, a claimant is eligible for benefits if he meets the income and resource limitations of 42 U.S.C. §§ 1382(a)(1)(A)-(B) and demonstrates that he is disabled based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A person is disabled

only if his physical or mental impairment(s) are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether the claimant is disabled, the Commissioner performs a five-step sequential evaluation. *See generally* 20 C.F.R. § 404.1520(a)(4)(i)–(v). The claimant bears the burden of establishing the first two requirements. The claimant must establish that he (1) has not engaged in "substantial gainful activity" and (2) is afflicted with "a severe medically determinable physical or mental impairment." 20 C.F.R. §§ 404.1520(b)–(c), 404.1521. If a claimant fails to demonstrate either of these two requirements, benefits are denied and the inquiry ends. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant successfully proves the first two requirements, the inquiry proceeds to step three which requires the claimant to demonstrate that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Part 404 Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the claimant demonstrates that his impairment meets or equals one of the listed impairments, he is presumed to be disabled and therefore, automatically entitled to benefits. *Id.* If he cannot make the required demonstration, further examination is required.

The fourth step of the analysis asks whether the claimant's residual functional capacity ("RFC") permits him to resume his previous employment. *Id.* If a claimant is able to return to his previous employment, he is not disabled within the meaning of the Act and is not entitled to benefits. *Id.* If the claimant is unable to return to his previous employment, the analysis proceeds to step five. At this step, the burden shifts to the Commissioner to demonstrate that the claimant can perform a job that exists in the national economy based on the claimant's RFC, age, education,

and past work experience.   20 C.F.R. § 404.1520(g).   If the Commissioner cannot satisfy this

burden, the claimant is entitled to benefits.   *Yuckert*, 482 U.S. at 146 n.2.

**B.      The Requirement of Objective Medical Evidence**

Under the Act, disability must be established by objective medical evidence.   "An

individual shall not be considered to be under a disability unless he furnishes such medical and

other evidence of the existence thereof as the [Commissioner] may require."   42 U.S.C. §

423(d)(5)(A).   Notably, "[a]n individual's statement as to pain or other symptoms shall not alone

be conclusive evidence of disability as defined in this section."   *Id.*   Specifically, a finding that one

is disabled requires:

> [M]edical signs and findings, established by medically acceptable
> clinical or laboratory diagnostic techniques, which show the existence
> of a medical impairment that results from anatomical, physiological, or
> psychological abnormalities which could reasonably be expected to
> produce the pain or other symptoms alleged and which, when
> considered with all evidence required to be furnished under this
> paragraph . . . would lead to a conclusion that the individual is under a
> disability.

*Id.*; *see* 42 U.S.C. § 1382c(a)(3)(A).   Credibility is a significant factor.   When examining the

record: "The adjudicator must evaluate the intensity, persistence, and limiting effects of the

[claimant's] symptoms to determine the extent to which the symptoms limit the individual's ability

to do basic work-related activities."   SSR 96-7p, 1996 WL 374186 (July 2, 1996).   To do this, the

adjudicator must determine the credibility of the individual's statements based on consideration of

the entire case record.   *Id.*

The list of "acceptable medical sources to establish whether [a claimant] has a medically

determinable impairment" includes licensed physicians, but does not include nurses.   20 C.F.R. §

404.1513(a).   Though the ALJ "may also use evidence from other sources to show the severity of

[a claimant's] impairments," this evidence is "entitled to consideration as additional evidence" and does not need to be given the same weight as evidence from acceptable medical sources. 20 C.F.R § 404.1513(d)(1); *Hatton v. Comm'r of Soc. Sec.,* 131 Fed. App'x 877, 878 (3d Cir. 2005). Factors to consider in determining how to weigh evidence from medical sources include (1) the examining relationship, (2) the treatment relationship, including the length, frequency, nature, and extent of the treatment, (3) the supportability of the opinion, (4) its consistency with the record as a whole, and (5) the specialization of the individual giving the opinion. 20 C.F.R. § 404.1527(c).

## IV.   DISCUSSION

### A.  Summary of ALJ Mc Afoos' Decision

On April 9, 2013, ALJ Mc Afoos issued a decision finding that Plaintiff was not disabled as defined in section 223(d) of the Act, relevant to Plaintiff's application for CIB, and that Plaintiff was not disabled under section 1614(a)(3) of the Act, relevant to Plaintiff's application for SSI. (R. at 38). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged June 1, 1995 onset of his disability. (Id. at 21). At step two, based upon an extensive review of Plaintiff's medical history, ALJ Mc Afoos found that Plaintiff suffered from "the following severe impairment: affective mood disorder, learning disability, a back injury, speech impairment, and a history of polysubstance addiction." (Id.). At step three, however, the ALJ found that these impairments do not meet or medically equal in severity any of the impairments listed in the Act's promulgating regulations. (Id. at 33, citing 20 CFR Part 404, Subpart P, Appendix 1).

Before proceeding to step four, after considering the entirety of the record before him, the ALJ found that Plaintiff "has the residual functional capacity to perform a full range of light work but due to his mental impairments he is limited to unskilled work activity." (Id. at 34-37).

Specifically, at this step, the ALJ found that Plaintiff's "reported restrictions are not fully persuasive to the extent alleged, when considered with the totality of the medical evidence of record" where "the reports of the treating and examining physicians provide substantial evidence that the claimant's impairments do not impose such severe limitations on his functional capacity as to preclude performance of all work activity." (Id. at 37).  Thus, the ALJ found Plaintiff's statements regarding his inability to work not credible in light of the objective medical evidence. (Id. at 34).  The ALJ observed a

> pattern of noncompliance with [Plaintiff] taking his medication and the [Plaintiff] has admitted that once he feels better he stops taking his medication.  Hospital records have shown the [Plaintiff's] symptoms abate dramatically when restarted on his medication and the [Plaintiff's] GAF has been in the 65 to 76 range (mild symptoms) when on medication. (Id. at 35).

Stated differently, the ALJ gave great weight to the high GAF scores, representing only mild symptoms, reported when Plaintiff was compliant with his medication.  (Id.).  Specifically, the ALJ noted that while incarcerated from March 2007 through May 2009, Plaintiff's GAF scores never fell below 68, suggesting that so long as Plaintiff remains compliant with his medication regimen and does not relapse into substance abuse, he demonstrates only a mild degree of limitations in activities of daily living and social functioning.  (Id. at 35).  In rendering this opinion, the ALJ found Plaintiff's claims that back pain prevents him from engaging in any work to be unavailing in light of reports showing no positive findings and noting Plaintiff's ability to carry on activities of daily living despite complaints of back pain. (Id.).  Generally, ALJ Mc Afoos noted reports from different physicians acknowledging Plaintiff's ability to tend to household chores and engage in hobbies he enjoys.  (Id. at 36).  As to Plaintiff's cognitive functioning, ALJ Mc Afoos found a "moderate degree of limitations in the concentration, persistence and pace area of

functioning," with "moderate" defined as "intermittent difficulty performing in this area, but on the whole he can generally perform satisfactorily in this area." (Id. at 36).

At step four, the ALJ noted that Plaintiff had no relevant work experience. At the final step of his analysis, the ALJ found that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." Accordingly, the ALJ found that Plaintiff was not disabled as the term is defined in the Social Security Act prior to the time that he attained age 22 or during the date of the decision, and therefore was not entitled to CIB or SSI.

**B. Analysis**

Plaintiff advances three arguments as to why the ALJ's opinion should be remanded.[2] First, Plaintiff contends that ALJ Mc Afoos committed reversible error by mischaracterizing and failing to properly evaluate the evidence from Dr. Vernon, one of his treating physicians. (Pl.'s Mov. Br. at 11-14). Relatedly, Plaintiff submits that the ALJ failed to consider medical evidence that contradicts his ultimate conclusion as to the seriousness of Plaintiff's physical injuries. (Pl.'s Reply Br. at 5-7). Second, Plaintiff argues that the "ALJ's mental residual functional capacity, with only a limitation to unskilled work despite ample evidence of a greater degree of impairment, cannot be deemed supported by substantial evidence and fails even to fully account for the ALJ's own finding that Mr. Smith has moderate limitations of concentration, persistence, or pace." (Pl.'s Mov. Br. at 14-2). In short, Plaintiff takes exception with the ALJ's determination of Plaintiff's

---

[2] Defendant's brief includes an argument addressing "Plaintiff's assertion that the ALJ erred by not considering impairments under the child listing (Pl.'s Br. at 8-9)"; however, nowhere in Plaintiff's brief does he assert such an argument. (See ECF No. 12, "Pl's. Reply Br." at 8). Similarly, despite the Government's rebuttal argument (Def.'s Opp. Br. at 12-14), Plaintiff has not argued in his briefing that remand is appropriate for the ALJ's consideration of evidence submitted to the Appeals Council. (Pl.'s Reply Br. at 2). Accordingly, the Court need not address these issues.

RFC determination as it relates to his physical and mental impairments.  Lastly, Plaintiff argues that the ALJ erred at step five by failing to call a vocational expert to testify as to the availability of work that Plaintiff can perform in light of his nonexertional impairments.  (Id. at 20-22).  The Court will address each of these arguments, in turn.

### i.   The ALJ's Findings as to Plaintiff's RFC

Before proceeding to step four of his analysis, the ALJ formulated Plaintiff's RFC as follows:

> Giving the claimant the benefit of the doubt, the undersigned finds that the claimant demonstrates a mild degree of limitation in the activities of daily living area of functioning; a mild degree of limitation in the social functioning area of functioning; a moderate degree of limitations in the concentration, persistence and pace area of functioning; however, the undersigned finds that "moderate" means the claimant has intermittent difficulty performing in this area, but on the whole can generally perform satisfactorily in this area.

(R. 36).  Ultimately, the ALJ found "that the claimant has the residual functional capacity to perform a full range of light work but due to his mental impairments he is limited to unskilled work activity."  (Id. 34).

### a.   The ALJ Erred in his RFC Determination by Mischaracterizing Certain Evidence and Failing to Offer an Explanation as to why Certain Contradictory Evidence was Rejected or Disregarded

In determining Plaintiff's RFC, the ALJ held that "the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."  (R. 34). With regards to Plaintiff's complaints of back and neck pain, the ALJ stated:

12

[A]n MRI of the lumbar spine showed a herniated disc at the L4-L5 level and x-rays of the cervical spine showed degenerative disc disease (see Exhibit 2F &40F). However, Dr. Vernon reported in July 2005, that the claimant could conduct normal activities despite discomfort or limited mobility of one of more joints and he anticipated that the claimant could return to work by September 2005 (Exhibit 17F). In December 2010, Dr. Khona stated that the claimant reported having a history of neck and back pain, but he had no positive findings on physical examination (Exhibit 8F). Dr. Goldstein reported in July 2011, that the claimant had been diagnosed with having neck pain and low back pain however, he could lift and carry up to 45 pounds occasionally and he had no limitations with standing, walking, sitting or pushing/pulling (Exhibit 13F); and Dr. Sewell reported that the claimant's only physical limitation was with lifting (Exhibit 45F). Findings on examination have shown full range of motion of the cervical and lumbar spine, full muscle strength and no muscle atrophy in the upper or lower extremities (see Exhibit 8F). The undersigned notes that signs of muscle atrophy are usually observed when pain is severe and functionally limiting.

As to Dr. Sherry's opinion that the claimant had the capacity for light work (see Exhibit 2A); the undersigned gives it great weight was it is [sic] consistent with the medical evidence of record (SSR 96-6p).

(R. 36-37).

The Court finds that the ALJ's errors with regards to the consideration of Dr. Vernon's reports requires remand. The ALJ characterized Dr. Vernon's July 2005 report as stating that Plaintiff could conduct "normal activities." (R. 36). Although Dr. Vernon checked boxes indicating that Plaintiff suffered a Class II[3] and Class III functional classification, Dr. Vernon's handwritten notes on the July 2005 report describe Plaintiff as "physically and mentally unable to work—herniated discs, depression." (Exhibit 17F, R. 793). The Court finds this error to be significant in light of the fact that inaccurate characterization of Dr. Vernon's opinion in July 2005 appears to be offered in support for minimizing the significance of positive MRI findings. (See

---

[3] Class II is characterized as "[f]unctional capacity adequate to conduct normal activities despite handicap, discomfort or limited mobility of one or more joints," while Class III is characterized as "[f]unctional capacity adequate to perform only little or none of the duties of usual occupation or of self care." (R. 793).

id.). Moreover, as Defendants have conceded that the ALJ failed to address Dr. Vernon's earlier reports, the ALJ should consider these reports when reconsidering Dr. Vernon's findings.

Plaintiff also argues that the ALJ relied upon selective reports relating to his physical limitations on account of a neck and back injury without sufficiently explaining his rejection of those reports. After reviewing the entirety of the record, the Court agrees that the ALJ's failure to specifically reference contradictory reports requires remand. For example, records dated June 2005 from the Center for Pain Management, authored by Dr. Barry Korn, D.O. (Exhibits 1F, 2F) stated: "Trigger points were noted in the bilateral C2-3, bilateral supraspinatus and bilateral L4-5 areas with positive jump signs elicited, muscle spasticity, taut bands, MRI of lumbar spine: herniated nucleus pulposus L4-5" (Exhibit 1, R. 555) and reported "L5-S1 radiculopathy." (Id., R. 557). Although the ALJ provided a detailed description of Dr. Korn's report in the second step (R. 23) of the analysis and cited to these records in his RFC analysis (R. 36), ALJ Mc Afoos failed to explain his rejection of these records in his RFC determination. Similarly, while Dr. Sewell's September 2012 report factored into the ALJ's RFC determination (R. 37, citing Exhibit 45F), ALJ Mc Afoos did not address the Doctor's follow-up report dated November 2012, which indicated that Plaintiff exhibited "tenderness on palpation" of his low back and diagnosed Plaintiff with, *inter alia*, neck and lower back pain. (Exhibit 47F, R. 1503). Moreover, in step two of the ALJ's analysis, he discussed in detail a February 7, 2005 report of Dr. Moishe Starkman (R. 23) in which "Dr. Starkman stated that the claimant can lift and carry no more than fifty pounds and that he can stand, walk, climb, stoop, and bend for no more than ten to twenty minutes; and that he had the functional capacity to perform little or none of the duties of his usual occupation." (R. 23). Dr. Starkman identified "anxiety, depression, cervical strain, lumbar sacral strain, tingling in lower extremities" and estimated Plaintiff's disability status to last until April 19, 2005. (Exhibit 17F,

R. 784). To the extent the ALJ attributed little weight to these records, he should have explained his reasons for doing so. *See Burnett v. Comm'r of Soc. Sec,* 220 F.3d 112, 121 (3d Cir. 2000) (citing *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)) (explaining that the district court cannot determine whether evidence was discredited or simply ignored where the ALJ has failed to properly indicate why evidence was discredited or rejected).

In summary, the Court finds that the ALJ's mischaracterization of Dr. Vernon's July 2005 report, in conjunction with his failure to consider Dr. Vernon's earlier reports and failure to discuss why certain other evidence of Plaintiff's physical impairments were not addressed warrants remand.

### b.   The ALJ did not err in Applying the Psychiatric Review Technique

Plaintiff argues that the ALJ erred in not applying the psychiatric review technique until step four of his analysis. (Pl's. Br. at 14). Defendant responds that, under Third Circuit case law, the ALJ need not "use particular language or adhere to a particular format in conducting his analysis." (Def's. Br. at 17, n.1). The Court finds that the ALJ did not err in its application of the psychiatric review technique.

In 1985, the Social Security Administration published revised regulations for handling claimants alleging a disability on account of a mental impairment. *See Ramirez v. Barnhart*, 372 F.3d 546, 551 (3d Cir. 2004) (citing 20 C.F.R. § 416.920a (1999)). The Administration developed a technique for evaluating mental impairments, requiring the adjudicator to complete a form known as the Psychiatric Review Technique Form. *Id.* Pursuant to that technique, the adjudicator is required to "first evaluate [the plaintiff's] pertinent symptoms, signs and laboratory findings to determine whether [he] has a medically determinable mental impairment(s)." 20 C.F.R. § 416.920a(b)(1). Next, if the adjudicator determines that Plaintiff has a severe mental impairment,

then he "must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairments(s)."  Id.; 20 C.F.R. § 416.920a(e).

The Court finds that the ALJ did not err in applying the psychiatric review technique. Indeed, in the nearly thirteen pages of the ALJ's opinion relating to step two of the analysis, the ALJ provided a detailed discussion of Plaintiff's history of treatment of mental impairments, ultimately concluding that Plaintiff suffered from the following mental impairments: affective mood disorder, a learning disability, speech impairment, and a history of polysubstance addiction. (R. 21).  Moreover, in determining that Plaintiff did not have an impairment or combination of impairments sufficient to meet a listed impairment, the ALJ stated that he had "considered the opinion of the State Agency medical consultants who evaluated the initial and reconsideration levels of the administrative review process and reached the same conclusion that the claimant's impairments do not meet or equal a listing."  (R. 33).  Indeed, the State Agency medical consultants' application of the psychiatric review technique, at both the initial and reconsideration levels, supports the ALJ's determinations.  (See R. 70-129).  The ALJ further stated that he "considered the degree of limitation imposed by [Plaintiff's] mental impairments on his ability to work," and refers Plaintiff to the "detailed description of the medical evidence" included in step four of the analysis. (Id.).

Accordingly, the Court finds that the ALJ did not err in applying the psychiatric review technique throughout his analysis.

### c.  The ALJ Failed to Explain Reasons for Discrediting or Rejecting Contradictory Medical Records Relating to Plaintiff's Mental Impairments

With regards to Plaintiff's nonexertional impairments, the ALJ stated:

> Giving the claimant the benefit of the doubt, the undersigned finds that the claimant demonstrates a mild degree of limitation in the activities of daily living area of functioning; a mild degree of limitation in the social functioning area of functioning; a moderate degree of limitations in the concentration, persistence and pace area of functioning; however, the undersigned finds that "moderate" means the claimant has intermittent difficulty performing in this area, but on the whole can generally perform satisfactorily in this area.

(R. 36).

The ALJ further noted a "pattern of noncompliance with [Plaintiff] taking his medication and the [Plaintiff] has admitted that once he feels better he stops taking the medication (See Exhibit 35F)." (R. 35). Moreover, the ALJ stated that "[h]ospital records have shown the claimant's symptoms abate dramatically when restarted on his medication (see Exhibits 32F, 18F, 19F, 40F, & 31F) and the claimant's GAF has been in the 65 to 76 range (mild symptoms) when on medication (see Exhibits 31F, 20F, 40F & 7F)." (Id.).

Plaintiff asserts a number of grievances with the ALJ's consideration of his nonexertional impairments. (Pl's. Mov. Br. at 14-20). Plaintiff contends that the ALJ committed factual and legal error by mischaracterizing Plaintiff's history of GAF scores and by relying too heavily upon those scores. (Pl's. Mov. Br. at 17). Plaintiff further argues that the ALJ cherry-picked the record in observing that Plaintiff's hospitalizations usually lasted "just for a few days, as he quickly responds to the medication." (Pl's. Mov. Br. at 17; R. 36). Additionally, according to Plaintiff, the ALJ erred in relying heavily on Dr. Coffey's December 2010 report and in rejecting the opinions of Dr. Sewell. (Id. at 19). Plaintiff contends that "the ALJ failed to explain how [Plaintiff's] acknowledged impairments and limitations are actually consistent with the ability to persist on [ ] tasks and to sustain them at a consistent pace as demanded by unskilled work." (Id. at 20). Lastly, Plaintiff argues that the ALJ's RFC failed to account for the ALJ's own findings

that Plaintiff suffered from a severe affective mood disorder, learning disability, and speech impairment. (Id. at 14).

In response to these arguments, the Government asserts that the ALJ's determination of Plaintiff's RFC properly accounted for only the mental limitations that were supported by the record, and has provided the Court with citations to a number of records substantiating the ALJ's RFC determination.

Just as the Court found that the ALJ failed to properly explain his rejection of conflicting reports with regards to Plaintiff's physical impairments, the Court finds that the ALJ similarly failed to discuss why contradictory medical records relating to Plaintiff's mental impairments were disregarded. For example, ALJ Mc Afoos stated that "[h]ospital records have shown the claimant's symptoms abate dramatically when restarted on his medication (see Exhibits 32F, 18F, 19F, 40F, & 31F) and the claimant's GAF has been in the 65 to 76 range (mild symptoms) when on medication (see Exhibits 31F, 20F, 40F & 7F)." Upon review of the record, it is apparent to the undersigned that Plaintiff's GAF scores on discharge have frequently fallen well below the 65 to 76 range relied upon by the ALJ. (See Exhibit 18F, GAF of 55 (moderate impairment in social or occupational function) on discharge, noting "highest GAF in past year" as 60; Exhibit 19F, GAF of 50 (serious impairment in social or occupational functioning) on discharge; Exhibit 22F, GAF of 50 on discharge, reporting "highest past year" as 50-60). While the ALJ notes these GAF scores at the second step of his analysis, the ALJ has not sufficiently explained his attention to the higher GAF scores and rejection of numerous low scores in his analysis of Plaintiff's RFC.

Plaintiff similarly argues that the ALJ failed to consider his extensive hospital stays in his analysis. The ALJ stated that "the evidentiary record fails to indicate or suggest that the claimant has experienced repeated episodes of decompensation of extended duration; the undersigned notes

the majority of the claimant's hospitalizations are just for a few days, as he quickly responds to medication." (R. 36).  Having reviewed the record, the Court tends to agree with the ALJ that the majority of Plaintiff's hospitalizations lasted only a few days.  Accordingly, the Court finds Plaintiff's arguments to this point unavailing.

Moreover, the Court finds that the ALJ did not err in assigning great weight to the mental status examination of Dr. Wm. Dennis Coffey.  (R. 35).  In assessing Plaintiff's severity, Dr. Coffey identified Plaintiff's GAF score at 70, and stated that "Mr. Smith has adequate understanding, memory and concentration.  Mr. Smith had adequate mental pace and persistence.  Social interaction is adequate." (Exhibit 74, R. 642).  The ALJ explained that he assigned great weight to this opinion because "it is consistent with the findings from several treating doctors (see Exhibits 3F, 20F, 40F, & 31F)."  Indeed, a March 2006 report by Dr. Spiros Malaspina described Plaintiff as calm with judgment and insight described as "fair." (Exhibit 20F, R. 869).  Moreover, Dr. Coffey's report is consistent with Plaintiff's medical records during his period as an inmate at the Garden State Youth Correctional Facility.  (Exhibit 40F, see, e.g., R. 1175, noting in May of 2009 that Plaintiff's memory and judgment was intact, albeit his insight "nil", and reporting that Plaintiff was able to follow and contribute to the conversation"; Exhibit 40F, R. 1271, reporting Plaintiff's judgment and insight as "intact" in July 2008; Exhibit 40F, R. 1288, reporting Plaintiff's insight and judgment to be "fair" in May of 2008).

The Court similarly finds that the ALJ properly explained his decision to credit little weight to the contradictory mental assessment issued by Dr. Sewell, who found a "speech disturbance, problem with concentration and attention" and estimated that Plaintiff could not work for twelve months or more (R. 36; Exhibit 45F, R. 1464-65).  The ALJ attributed little weight to this opinion because Dr. Sewell "is not specialized in the field of psychiatry and his assessment likely relied

on unreliable information from the claimant." (R. 36).  The ALJ's rationale for discrediting Dr. Sewell's opinions are supported by regulations.  See 20 C.F.R. § 404.1527(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."; Id. § 404.1527(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

Accordingly, the Court finds that remand is proper in order for the ALJ to explain why evidence relating to Plaintiff's symptoms and mental status at the time of discharge from his numerous hospital visits were rejected or otherwise discredited.

## ii.     The ALJ erred at Step Five by Failing to Consider the Testimony of a Vocational Expert or Other Similar Evidence

Plaintiff alleges that the ALJ erred in not hearing vocational evidence.  (Pl's. Mov. Br. at 20-22).  Plaintiff contends that the ALJ should not have exclusively used the Medical-Vocational Rules (the "grids") to support a finding that Plaintiff was not disabled because of the nonexertional limitations (namely, affective mood disorder, a learning disability, and a speech impairment) which the ALJ found, at step two, to be "severe."  (Id. at 20).  The Government has not responded to this argument.

The Court agrees with Plaintiff that the ALJ's failure to use a vocational expert requires remand of this matter.  To be clear, there is no hard and fast rule in the Third Circuit with regards to when an ALJ is required to rely upon a vocational expert; however "[t]he courts of appeals agree at a general level that the grids cannot automatically establish that there are jobs in the national economy when a claimant has severe exertional and nonexertional impairments."  *Sykes v. Apfel*, 228 F.3d 259, 266 (3d Cir. 2000).

The grids set out various combinations of age, education, work experience and residual functional capacity and direct a finding of disabled or not disabled for each combination. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2. "When the four factors in a claimant's case correspond *exactly* with the four factors set forth in the grids, the ALJ must reach the result the grids reach." *Hall v. Comm'r of Soc. Sec.*, 218 F. App'x 212, 216 (3d Cir. 2007) (citing *Sykes*, 228 F.3d at 263; 20 C.F.R. § 404.1569 and Subpart P, Appendix 2, § 200.00) (emphasis in original). "However, where the limitations imposed by a claimant's impairments and related symptoms affect the ability to meet both the strength demands and non-strength demands of jobs, the grids will not apply to direct a conclusion as to disability, but will be used solely as a framework to guide the disability decision." *Id.* (citing 20 C.F.R. § 404.1569a(d)).

At step five of the analysis, after considering Plaintiff's age, past relevant work experience, education level, and RFC, the ALJ recognized that when, as in this case, the claimant has both exertional and non-exertional demands, the medical-vocational grids should be used as a "framework for decision-making." (R. 37). The ALJ then found that Rule 202.20 supports a finding of "not disabled" and that "[c]onsidering the claimant's exertional and non-exertional functional limitations, in combination with vocational factors, it is reasonable to find there is a significant number of jobs the claimant is able to perform on a remunerative, regular, sustained, reliable, and competitive basis." (R. 38).

To be clear, the existence of nonexertional limitations does not preclude an ALJ from "[u]sing the grids as a framework to guide the disability determination." *Hall*, 218 Fed. App'x. at 217. That said, the Third Circuit has held that where a claimant has nonexertional impairments in addition to exertional impairments, the ALJ is required to consider "the testimony of a vocational expert or other similar evidence, such as a learned treatise. In the absence of evidence in addition

to the guidelines . . . the Commissioner cannot establish that there are jobs in the national economy that someone with the claimant's combination of impairments can perform." *Sykes*, 228 F.3d at 273.

Here, although the ALJ used the grids as a "framework," he erred in not considering either "the testimony of a vocational expert or other similar evidence" in finding that a sufficient number of jobs exist in the national economy that Plaintiff could perform. Accordingly, the Court will remand this matter so that the ALJ can consider additional evidence, as required under *Sykes v. Apfel*, as to what effect, if any, Plaintiff's nonexertional impairments have on the availability of jobs that he may perform.

## V.    CONCLUSION

For the foregoing reasons, the opinion of the ALJ is remanded for further review consistent with this Opinion. An appropriate Order accompanies this Opinion.

IT IS SO ORDERED.

DATED:   January ~~27~~, 2016

JOSE L. LINARES
UNITED STATES DISTRICT JUDGE

22